UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH SPRINGS, *et al.*,

          *Plaintiff*,

    v.

CARLOS DEL TORO, *et al.*,[1]

          *Defendant.*

Civil Action No. 20-3244 (RDM)

## MEMORANDUM OPINION AND ORDER

This case concerns the disability ratings assigned to former members of the U.S. Navy and Marine Corps who suffered from medical conditions that rendered them unfit for continued military service. Dkt. 1 at 3–4 (Compl. ¶ 8). These ratings impact, among other things, service members' eligibility for benefits following their separation from the military. *Id.* at 3 (Compl. ¶ 7); AR 3231–32. Plaintiffs, two former members of the U.S. Navy and Marine Corps, allege that they were "assigned a combined disability rating for these [medical] conditions that was lower than the combined disability rating required by the relevant statutes and regulations." Dkt. 1 at 2 (Compl. ¶ 2). Plaintiffs have moved to certify a class of similarly situated individuals. Dkt. 34. In response, Defendants, the Secretary of the Navy and the United States, acknowledge that this suit may proceed as a class action but propose alterations to the class definition, Dkt. 35, to which Plaintiffs have agreed in their reply, Dkt. 37.

For the reasons that follow, the Court will **GRANT** Plaintiffs' motion as modified.

---

[1] The Court automatically substitutes the current Secretary of the Navy in the case caption. *See* Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party").

# I. BACKGROUND

A.   **Statutory and Regulatory Background**

Each branch of the military must develop a process for evaluating service members' medical conditions, their ability to continue service, and—if unable to serve—their eligibility for retirement benefits or severance payments. *See* 10 U.S.C. § 1216(a). One purpose of this evaluation is to generate a disability rating percentage, which is then used to determine whether the service member is entitled to disability retirement and retirement benefits. *See id.* § 1201(a)–(b). To receive such benefits, the service member's rating percentage must exceed 30%, *id.* § 1201(b)(3)(B); otherwise, the service member receives only a one-time severance payment, with no continuing benefits, *id.* § 1203(a)–(b). These ratings are based on "the schedule for rating disabilities in use by the Department of Veterans Affairs ('VA')," and, "[i]n making a determination of the rating of disability[,] . . . the Secretary concerned shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." *Id.* § 1216a.

In this action, Plaintiffs challenge the regulatory regime that implemented these statutory mandates for the Department of Navy, SECNAVINST 1850.4E, which includes both the Navy and the Marine Corps, 50 U.S.C. § 3004(b); *see also Jud. Watch, Inc. v. U.S. Dep't of Def.*, No. 19-cv-1384, 2021 WL 270503, at *3 (D.D.C. Jan. 27, 2021) ("[T]he Marine Corps is part of the Department of the Navy."). In June 27, 2019, however, the Secretary of the Navy, on behalf of the Navy and the Marine Corps, issued new regulations for making disability determinations, AR 3245; *see* SECNAVINST 1850.4F, and—although the new regime retains much of the structure of the prior one—the relief Plaintiffs seek applies only to the former scheme, Dkt. 37 at 5. Under that scheme, the Secretary of the Navy assigned to the Physical Evaluation Board ("PEB") "the

responsibility to act on [his] behalf to make determinations of fitness for continued naval service, entitlement to benefits, disability ratings, and the disposition of [s]ervice members referred to it" from both the Navy and the Marine Corps.  AR 3234.  The process itself was known as the Disability Evaluation System ("DES"), and service members required a referral into the DES from a medical provider after the "provider recognize[d] that a wound, illness, or injury w[ould] not improve to the point of returning a [service] member to full duty."  AR 3234–35.

      A medical referral initiated the first of the three steps involved in the DES.  At step one, the claim went to the Medical Evaluation Board ("MEB"), which "review[ed] the member's entire medical treatment record and often add[ed] other conditions for which the member may have been treated for or that the MEB believe[d] [affected] his or her ability to perform duties."  AR 3235.  The goal was to determine "whether the [s]ervice member ha[d] medical conditions that . . . prevent[ed] him or her from reasonably performing assigned duties;" if the MEB answer[ed] that question in the affirmative, "the case [wa]s referred to" to the PEB for "[t]he second of the three DES phases."  AR 3236.

      At the second step, "PEB administrators ensure[d] the file [wa]s complete and sen[t] it to a PEB Medical Officer" who conducted "an Informal PEB," or "a records review."  *Id*.  The Medical Officer "review[ed] the entirety of the case" and assigned each "referred condition" one of the following categories: "Category I (Unfitting), Category II (Contributing to the Unfitting Condition), Category III (Not Separately Unfitting and Does Not Contribute to the Unfitting Condition), and Category IV (Does Not Constitute a Physical Disability)."  *Id*.  "If the Medical Officer determined the member had a medical condition or medical conditions that prevented him or her from reasonably performing duties either singularly, collectively, or through the combined effect of two or more conditions, those conditions were assigned to Category I."  *Id*.  Any such

condition was known as an "unfitting condition."  AR 3239–40.  All other referred conditions were placed in Category II, III, or IV.  AR 3239.

As relevant to this litigation, if a Medical Officer determined that a service member was unfit for service, the Medical Officer assigned the service member a disability rating.  *See* SECNAVINST 1850.4E, § 3801(b); 10 U.S.C. § 1216(a).  This disability rating ranged from 0% to 100%, and "represent[ed], as far as can practicably be determined, the average impairment in civilian occupational earning capacity resulting from certain diseases and injuries, and their residual conditions."  SECNAVINST 1850.4E, § 3801(b); *see also* SECNAVINST 1850.4E, § 2063.  The Medical Officer issued a disability rating for each Category I condition, but, crucially for present purposes, "the Navy did not separately rate Category II conditions" while the regulatory scheme relevant to this litigation remained in place.  AR 3241.  This meant that, although the disability ratings issued for various Category I conditions might be aggregated to create a service member's combined disability rating, he or she would not receive the benefit of any additional rating based on Category II conditions.  AR 3243–44.  And, as noted above, it was the total percentage rating that determined whether a service member who was unfit for service (and thus must be separated from the military) was eligible for retirement benefits.  10 U.S.C. § 1201 (a)–(b); *see also* 38 C.F.R. § 4.25 (VA's combined ratings table).

Once the Medical Officer made these determinations and issued the relevant disability ratings, "a PEB Line Officer Adjudicator reviewed the same material and also assigned each referred condition into one of the four Categories."  AR 3237.  "As with the PEB Medical Officer, if the PEB Line Officer determined the Service member had a medical condition or medical conditions that prevent[ed] him or her from reasonably performing duties either singularly, collectively, or through the combined effect of two or more conditions, the PEB Line Officer

assigned those conditions to Category I." *Id.* If the Medical Officer and Line Officer disagreed, "a second Line Officer review[ed] the material and vote[d]." *Id.* If the service member was found "unfit based on unanimous or majority vote, PEB administrators sen[t] the case file" to the VA. *Id.* VA officials reviewed the file and assigned their own disability ratings—using the same percentage-based system—for "all unfitting conditions as determined by the PEB and all of the conditions claimed by the member in the MEB Phase." AR 3237–38. The VA then "sen[t] [those] ratings back to the PEB," which "matche[d] the [VA's] ratings to the unfitting conditions, . . . result[ing] in a Navy disability rating and a VA disability rating, respectively." AR 3238.

These ratings together constituted the results of the Informal PEB and were transmitted to the service member, who had 15 days to determine whether to "accept the Informal PEB findings or demand a Formal PEB." AR3238. If the service member requested a Formal PEB, the Navy's Office of the Judge Advocate General provided counsel for an in-person hearing at which the service member and counsel could "present evidence and testimony to argue, among other things, to be found [f]it or to have Category II, III, and IV conditions be elevated to Category I conditions." AR 3238–39. After such a hearing, the PEB sent the results to the service member, who again had 15 days to decide whether to accept the findings or to submit a petition for further review before the Navy Council of Review Boards. AR 3239. Before that body, the service member and counsel could "again present evidence to argue, among other things, to be found [f]it or to have Category II, III, and IV conditions be elevated to Category I conditions." *Id.*

The result of any such appeal represented the final determination regarding the service member's disability rating, trigging the third and final step of the process. *Id.* That step involved transmitting the final findings to the Navy's Bureau of Personnel or the Marine Corps' equivalent, at which point the service member was either returned to duty or discharged. *Id.* If the service

member was discharged, the service member's eligibility for retirement benefits turned on his or her disability rating. *Id.*; *see also* AR 3237. As noted above, only those with disability ratings of 30% or higher were eligible for retirement benefits, 10 U.S.C. § 1201(b)(3)(B), while those with ratings below that figure received only a one-time severance payment, *id.* § 1203(b)(4)(B).

**B.     Factual Background and Procedural History**

The parties agree about one fact central to this litigation—that, at least until June 27, 2019, "the Navy did not separately rate Category II conditions." AR 3241; *but see* AR 3242–43 (describing two exceptions); *see also* Dkt. 1 at 3–4 (Compl. ¶ 8). Instead, according to the Defendants, "a Category II rating was used as a placeholder that would allow the PEB to later determine whether the Category II condition properly should be reclassified as a Category I condition or a Category III condition." AR 3243. As a result, during the relevant time period the "PEB . . . never issued a findings letter that contained a disability rating attached to a Category II condition." AR 3245; *see also* Dkt. 1-3 at 3 (Ex. 1 at 3) (stating, in response to a FOIA request, that "Category II diagnoses do not receive a recorded disability rating percentage, are not recorded in the PEB system of record, and are not combined with Category I disability rating percentages"). The Secretary of the Navy "ended the use of Categories" as part of this disability rating system on June 27, 2019, with the issuance of new regulations. AR 3245; *see also* SECNAVINST 1850.4F.

Plaintiffs filed this suit on November 10, 2020, alleging that the statutory and regulatory scheme "required" the PEB "to assign a 'disability rating, from 0% to 100%, to each Category I unfitting condition *and Category II contributing condition*." Dkt. 1 at 3 (Compl. ¶ 6) (emphasis added). Defendants' alleged failure to comply with this obligation, Plaintiffs maintain, meant that service members "were denied their legal right to a disability rating for each of their Category II

6

conditions, which may have resulted in these service members receiving a lower combined disability rating and fewer benefits than they were entitled to under the applicable statutes and regulations." *Id.* at 4 (Compl. ¶ 8).

Plaintiffs Kenneth Springs, a Navy veteran, and Nathaniel Reese, a Marine Corps veteran, seek to represent a class of "similarly situated veterans of the Navy and Marine Corps." *Id.* (Compl. ¶ 9). Both named Plaintiffs were allegedly disadvantaged in the DES by the PEB's refusal to assign disability ratings to Category II conditions. *Id.* at 18–19, 23–24 (Compl. ¶¶ 54–57, 76–81). Both, according to the complaint, received 20% combined disability ratings even though each had medical conditions that qualified as Category II conditions. *Id.* at 19, 23–24 (Compl. ¶¶ 57, 80). Pursuant to Navy policy, neither received a rating for those Category II conditions, *see id.* at 24 (Compl. ¶ 83), leaving them with a disability rating of less than 30% and rendering them ineligible for the fully panoply of retirement benefits, *see* 10 U.S.C. § 1201.

Plaintiffs allege both that the PEB's refusal to assign disability ratings to Category II conditions violated the governing statutory provision, *see* Dkt. 1 at 27 (Compl. ¶¶ 97–98) (Count One), and that the PEB's practice was arbitrary and capricious in violation of the Administrative Procedures Act, 5 U.S.C. § 552 *et seq.*, in light of relevant regulations, *see* Dkt. 1 at 27–28 (Compl. ¶¶ 100–02) (Count Two); *id.* at 28 (Compl. ¶¶ 104–07) (Count Three). As relief, Plaintiffs seek both a declaration that Defendants' practice was unlawful and an injunction "requiring," among other things, "Defendants to correct the military records of Plaintiffs and the members of the [proposed] [c]lass." *Id.* at 29 (Compl. ¶ 109(e)). Plaintiffs further allege that they should be permitted to bring a class action "on behalf of themselves and a class of similarly situated individuals," to include "of all veterans of the United States Navy and Marine Corps whom the Defendants retired or separated for disability six years prior to the filing of this action,

7

whose PEB findings included at least one Category II condition." *Id.* at 25 (Compl. ¶¶ 86–87).

Defendants answered the complaint on February 9, 2021, Dkt. 19, and on June 15, 2021, Plaintiffs moved for class certification of the following class pursuant to Federal Rule of Civil Procedure 23(b)(2):

> (1) veterans of the United States Navy or Marine Corps who were separated up to six years prior to the filing of this complaint on November 10, 2020 by the Secretary after being found unfit for continued military service by the Physical Evaluation Board;
>
> (2) who were found by the Physical Evaluation Board to have at least one Category II unfitting condition whose rating the Navy failed to include when calculating DoD combined disability ratings; and accordingly,
>
> (3) who were denied military benefits on account of the Navy's failure to include the VA's assigned disability rating for the veterans' Category II conditions when calculating the veterans' DoD combined disability ratings.

Dkt. 34 at 1–2. In response, Defendants "agree[d] with Plaintiffs that the Court can certify a class under [Rule 23(b)], but disagree[d] with Plaintiffs' proposed class definition." Dkt. 35 at 4. Defendants proposed the following definition, instead:

> (1) veterans of the United States Navy or Marine Corps who were separated by the Department of the Navy between November 10, 2014 and June 27, 2019 after being found unfit for continued military service by the Department of the Navy's Physical Evaluation Board; and
>
> (2) who were found by the Physical Evaluation Board to have at least one Category II condition under SECNAVINST 1850.4E.

*Id.* at 11. Defendants' proposed alterations, they explained, addressed three issues with Plaintiffs' class definition. First, because Plaintiffs had defined the proposed class to include any service members who were separated from service during the "six years prior to the filing of [the] complaint on November 10, 2020," Dkt. 34 at 1, the proposed class "would include service members within the statute of limitations but *after* the Navy discontinued the category-based rating system at issue on June 27, 2019," Dkt. 35 at 11. Second, Defendants noted that the class

8

definition referenced "Category II *unfitting* condition[s]," Dkt. 34 at 1 (emphasis added), when in practice all unfitting conditions were assigned to Category I, meaning that "Plaintiffs' proposed class (service members with 'Category II unfitting condition[s]') would have zero members," Dkt. 35 at 12 (alterations in original).  Third, Defendants described the third part of Plaintiffs' class definition as "unnecessary, inaccurate," and "potential[ly] confus[ing]," in part because the "Navy sometimes reclassified Category II conditions as Category I conditions." *Id.* at 12–13.  Defendants' proposed edits to the class definition addressed these concerns by ending the class period on June 27, 2019, eliminating the "unfitting" descriptor of Category II conditions, and deleting the third part of the class definition. *Id.* at 8–13.

Following Defendants' response, the parties met and conferred regarding Defendants' proposed alterations to the class definition.  *See* Dkt. 37-3 (Ex. 1).  Plaintiffs have now agreed to Defendants' revised class definition and indicate that the parties further "agree that the proposed class meets the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(2) and that the action may be appropriately litigated as a Rule 23(b)(2) class action."  Dkt. 37 at 2.

## II.  LEGAL STANDARD

To proceed on behalf of a class, Plaintiffs must satisfy the requirements of both Rule 23(a) and Rule 23(b).  Under Rule 23(a), they must first show that "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  These four "prerequisites," *DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017), are referred to as numerosity, commonality, typicality, and adequacy of representation, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

Under Rule 23(b), in turn, Plaintiffs "must then demonstrate that their proposed class falls into one of the categories of class actions listed in Rule 23(b)." *DL*, 860 F.3d at 723. Plaintiffs have elected to proceed under Rule 23(b)(2), *see* Dkt. 37 at 4–5, which applies if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)), the party seeking class treatment "must affirmatively demonstrate . . . compliance" with Rule 23, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### III. ANALYSIS

Plaintiffs request both that the Court certify a class and that it appoint Plaintiffs' counsel as class counsel. The Court will address each request in turn.

**A.     Class Certification**

Although the parties "agree that the proposed class meets the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(2)," Dkt. 37 at 2, the Court nevertheless must satisfy itself, on behalf of absent class members and after a "rigorous analysis," *DL v. District of Columbia*, 302 F.R.D. 1, 10–11 (D.D.C. 2013), that those requirements are satisfied. As detailed below, the Court concludes that Plaintiffs have made the necessary showings.

1.     *Rule 23(a)*

The Court turns first to the four requirements imposed by Rule 23(a)—numerosity, commonality, typicality, and adequacy—and concludes that each is comfortably satisfied. As for numerosity, Plaintiffs need not clear any "specific threshold," although "courts in this jurisdiction

have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Although the parties dispute the exact size of the proposed class, they estimate that it includes between 13,000 and 16,000 former Navy and Marine Corps service members. Dkt. 34-1 at 8; Dkt. 35 at 13 n.4. Plaintiffs are entitled to rely on estimates for purposes of satisfying the numerosity requirement, *see Pigford v. Glickman*, 182 F.R.D. 341, 347–48 (D.D.C. 1998), and their estimates well exceed any floor on the number of potential class members needed to satisfy that reuqirement.

The Court may address the second and third requirements—commonality and typicality—together, as these inquiries often overlap. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019). The second requirement is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), while the third is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of class," Fed. R. Civ. P. 23(a)(3). The commonality requirement requires that class members' claims "depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The typicality requirement, in turn, demands that the proposed representative plaintiffs "possess the same interest and suffer the same injury" as the other class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks and citations omitted). "While commonality requires a showing that the members of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the representatives of the class suffered a similar injury from the same course of conduct." *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003).

Both requirements are satisfied here. This case will likely turn, as Plaintiffs argue, on the

11

following two questions of law—"[w]hether the Navy's failure to include [a] disability rating for all Category II unfitting conditions when calculating service members' combined disability ratings" violated the relevant statutes and regulations, and "[w]hether the Navy's decision not to include [a] disability rating for all Category II conditions when calculating service members' . . . combined disability ratings was arbitrary and capricious in light of the [relevant] regulations." Dkt. 34-1 at 12.  Those questions apply to all putative class members, and the proposed class representatives, Plaintiffs Springs and Reese not only "suffered a similar injury from the same course of conduct," *Bynum*, 214 F.R.D. at 34; they suffered nearly identical injuries as the proposed class members.  The PEB found that both Springs and Reese—and each proposed class member—had at least one Category II condition that the PEB failed to assign a disability rating for purposes of their combined disability rating.  *See* Dkt. 34-1 at 11; Dkt. 37 at 3.  This failure, according to Plaintiffs, generated "lowball disability ratings" "which may have resulted in [class] members receiving a lower combined disability rating and fewer benefits than they were entitled." Dkt. 1 at 4 (Compl. ¶ 8).  Although it is conceivable that, under Plaintiffs' theory, Plaintiffs and class members may have been shortchanged to different extents, the relief sought goes to the PEB's consideration of these Category II conditions, rather than the resulting effect on retirement benefits for Plaintiffs and the proposed class.  Because Defendants' practice exposed all putative class members and Plaintiffs to the same alleged deprivation of their statutory and regulatory rights, the Court finds that the proposed class satisfies Rule 23(a)'s requirements of commonality and typicality.

      The final 23(a) requirement—adequacy—imposes two conditions: first, "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and second, "the representative must appear able to vigorously prosecute the interests

12

of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). The Court is aware of no conflicting interests between Plaintiffs and the other proposed class members, and Plaintiffs and their counsel have ably litigated this case to date. The Court concludes, accordingly, that Plaintiffs will adequately represent the interests of the proposed class, meaning Plaintiffs have satisfied each of the 23(a) requirements.

    2.    *Rule 23(b)(2)*

The Court also concludes that Plaintiffs have satisfied Rule 23(b)(2)'s requirements. Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quotation marks and citations omitted). Rule 23(b)(2) imposes "two requirements: (1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37.

Neither of these requirements poses an obstacle to class certification here. Because Plaintiffs "are only challenging the application of standardized policies that generally apply to the class," *Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 34 (D.D.C. 2017), Defendants' conduct "can be enjoined or declared unlawful only as to all of the class members or to none of them," *Dukes*, 564 U.S. at 360 (quotation marks and citations omitted); *see also Samma v. U.S. Dep't of Def.*, No. 20-cv-1104, 2020 WL 4501000, at *9 (D.D.C. Aug. 4, 2020) (certifying a class under Rule 23(b)(2) because the agency-defendant's policy applied generally to all class

13

members).  As Plaintiffs argue, Springs, Reese, and the members of the proposed class "are all veterans of the United States Navy or Marine Corps who were separated within the relevant six-year time period" after being found unfit for service by the PEB, "and who were found by the PEB to have at least one Category II . . . condition, to which the Navy failed to assign a disability rating."  Dkt. 34-1 at 6.  Each of these individuals, whether in the Navy or the Marine Corps, was subject to the same process (the DES) pursuant to the same regulatory scheme (SECNAVINST1850.4E).  The Court's determination of whether the PEB's treatment of Category II conditions violated the relevant statutory and regulatory provisions will, accordingly, affect Plaintiffs and all proposed class members in exactly the same way.[2]  As Defendants concede, the PEB addressed such conditions in the same manner for every service member, *see* AR 3241–45, and thus every class member was similarly affected by that policy.  Because Defendants' conduct is therefore "generally applicable to the class" and because any relief issued by this Court will apply to the entire class, *Bynum*, 214 F.R.D. at 37, the Court concludes Plaintiffs have satisfied Rule 23(b)(2)'s requirements.

>Consistent with the parties' agreement, that class shall be defined as follows:
>
>(1) veterans of the United States Navy or Marine Corps who were separated by the Department of the Navy between November 10, 2014 and June 27, 2019 after being found unfit for continued military service by the Department of the Navy's Physical Evaluation Board; and
>
>(2) who were found by the Physical Evaluation Board to have at least one Category II condition.

*See* Dkt. 37 at 2.[3]

---

[2] Although, as the Court noted during a hearing on this motion, it is at least conceivable that some class members may not wish to have their disability ratings recalculated if the Court ultimately enters judgment for Plaintiffs in this matter, the parties agreed that such concerns are likely to be rare and can, in any event, be addressed at the remedial stage of this case if necessary.

[3] Because the Court concludes that certification is proper under Rule 23(b)(2), the Court need not address Plaintiffs' argument that certification is also appropriate under Rule 23(b)(1), *see* Dkt. 34-

B.      **Appointment of Class Counsel**

When certifying a class, the Court must also appoint class counsel.  *See* Fed. R. Civ. P. 23(c)(1)(B), (g).  Federal Rule of Civil Procedure 23(g) mandates that, in making that determination, the Court should consider the following four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).  Pursuant to that rule, Plaintiffs request that the Court appoint Dechert LLP and National Veterans Legal Services Program ("NVLSP") as class counsel.  Dkt. 34 at 3.

Defendants raise no objection to the appointment of Dechert LLP and NVLSP as class counsel, and after considering the relevant materials, *see* Dkt. 34-1 at 19–20; Dkt. 34-2 (Sarchio Decl.); Dkt. 34-3 (Leibfarth Decl.), the Court finds that all four factors weigh in favor of their appointment.  Those materials demonstrate that attorneys from Dechert LLP and NVLSP have "devoted substantial amounts of time and resources . . . to investigate the claims asserted" in the complaint, and that, as a group, they "have extensive experience in all areas of litigation, including pro bono litigation, class action litigation, and complex commercial litigation."  Dkt. 34-2 at 3 (Sarchio Decl. ¶¶ 7–8); *see also* Dkt. 34-3 at 3 (Leibfarth Decl. ¶¶ 6–7).  As for "knowledge of the applicable law," Fed. R. Civ. P. 23(g)(1)(A)(iii), counsel from the NVLSP is a senior staff attorney whose practice includes "assisting active-duty service member[s] and

---

1 at 18–19.  Moreover, because Plaintiffs do not mention Rule 23(b)(1) in their reply brief when describing the parties' positions with respect to class certification, *see* Dkt. 37 at 2, it is somewhat unclear whether Plaintiffs continue to press that argument.

veterans in obtaining medical military retirements through NVSLP's Lawyers Service Warriors program." Dkt. 34-3 at 2 (Leibfarth Decl. ¶ 2). And, as for the necessary resources required to pursue this litigation, Fed. R. Civ. P. 23(g)(1)(A)(iv), counsel from Dechert LLP represents that the firm "has more than sufficient resources to litigate this matter to completion," Dkt. 34-2 at 3 (Sarchio Decl. ¶ 9). In light of this undisputed record and counsel's able representation of Plaintiffs thus far, the Court will appoint Dechert LLP and NVLSP to represent the class.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' motion for class certification and for appointment of class counsel, Dkt. 34, is **GRANTED**. The class shall include the following individuals:

> (1) veterans of the United States Navy or Marine Corps who were separated by the Department of the Navy between November 10, 2014 and June 27, 2019 after being found unfit for continued military service by the Department of the Navy's Physical Evaluation Board; and
>
> (2) who were found by the Physical Evaluation Board to have at least one Category II condition.

It is further **ORDERED** that (1) Dechert LLP and NVSLP are hereby appointed as class counsel; and (2) on or before April 15, 2022, the parties shall file a joint status report proposing a schedule for further proceedings and indicating the parties' positions with respect to whether the Court should "direct appropriate notice to the class," Fed. R. Civ. P. 23(c)(2)(A).

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

March 11, 2022