**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KENNETH SPRINGS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 20-cv-3244 (RDM) |
| v. | ) | |
| | ) | |
| CARLOS DEL TORO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 6

I. The Court may consider the Reeser Declaration and other documents .......... 6

A. The Reeser Declaration is properly included in the administrative record because the challenged policy was exempt from notice and comment. .......... 6

B. The Reeser Declaration (and other documents) are permissible because they explain contemporaneous Navy policy. .......... 8

II. Plaintiffs are not entitled to unusual extra-record discovery .......... 11

CONCLUSION .......... 14

# INTRODUCTION

In March 2021, Plaintiffs brought suit to challenge the Navy's application of a Secretary of the Navy Instruction—SECNAVINST 1850.4E—from its issuance in April 2002 until it was superseded in June 2019 by SECNAVINST 1850.4F. Specifically, Plaintiffs challenge the Navy Physical Evaluations Board's ("PEB") use of category designations to administer its Disability Evaluation System ("DES") and allege that SECNAVINST 1850.4E required the Navy to separately rate all conditions labelled Category II. Plaintiffs claim that any other interpretation of SECNAVINST 1850.4E would be inconsistent with the meaning of that instruction and would violate both a statute and a regulation that post-date the issuance of that instruction.

Because the regulation at issue was exempt from customary notice and comment rules under 5 U.S.C. § 553(a)(1)—and was nearly 20 years old when Plaintiffs brought this suit—little record evidence existed to explain its operation. Accordingly, the Navy relied on long-standing D.C. Circuit precedent to supplement the administrative record with the Declaration of John Reeser, President of the PEB. Mr. Reeser is not an attorney, and his declaration provides helpful insight on the operation of SECNAVINST 1850.4E and the practice of the PEB with respect to category designations over the last two decades, which is consistent with the record evidence.

Now, more than a year after it was added to the administrative record, Plaintiffs move to strike Mr. Reeser's declaration. They contend that the Declaration is an impermissible post hoc rationalization of the Navy's policy for administering the category designations. This Court should deny Plaintiffs' motion because a declaration explaining the challenged policy by the agency decision maker is a permissible inclusion in the administrative record when the challenged agency policy was exempt from notice-and-comment rulemaking. *Women Involved in Farm Econ. v. USDA ("WIFE")* 876 F.2d 994 (D.C. Cir. 1989). Plaintiffs' attempts to distinguish this case from *WIFE* are unavailing.

But, even if the *WIFE* line of cases was inapplicable, the Declaration is still properly included in the record because it is a contemporaneous explanation of an agency decision made by the agency decision maker. *See, e.g., Rhea Lana, Inc. v. U.S. Dep't of Labor*, 925 F.3d 521 (D.C. Cir. 2019); *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731 (D.C. Cir. 2001). The Declaration from the PEB's

President, the agency official who issued the PEB's formal action for both named Plaintiffs, provides helpful insights into the Navy's process for assigning disability ratings that will assist this Court in deciphering a complex agency process. And where the Declaration contains rationales, they merely expound upon existing justifications already present in the administrative record.

For similar reasons, the Court should reject Plaintiffs' cursory attempt to strike two other documents: the Correction Memos and Corrected PEB Findings that appear in the administrative record index as documents 45 and 46. Admin. R. ("AR") 3222–30. The documents were included in the administrative record to clarify that the ratings in the PEB's Formal Rationale govern when there are inconsistencies in the category ratings between the PEB's Formal Findings and the PEB's Formal Rationale for Mr. Springs and Mr. Reese. Because these documents only clarify some minor (and immaterial) inconsistencies in the administrative record, they are likewise entirely permissible.

## BACKGROUND

The retirement or separation of service members based on physical disabilities is governed by Title 10, U.S. Code, Chapter 61. Under this authority, the Secretary of Defense and Secretaries of each military department have promulgated regulatory guidance for disability determinations. *See* 10 U.S.C. § 1216. For the Department of the Navy, Secretary of the Navy Instruction ("SECNAVINST") 1850.4E was the governing regulation from April 30, 2002, to June 27, 2019. AR 02597–897. Among other things, the instruction defined the process by which the Navy would make fitness determinations, on behalf of the Secretary of the Navy, for Sailors and Marines' continued service, entitlement to benefits, disability ratings, and disposition following physical disability referrals. AR 02599, SECNAVINST 1850.4E ¶ 4.a. As outlined in the instruction, the Navy's disability rating process has three phases. First, a medical provider refers a service member to the Medical Evaluation Board ("MEB"). The MEB's purpose is to review the member's medical conditions and refer potentially unfitting conditions to the PEB. AR 02656, SECNAVINST 1850.4E ¶ 3201.a. Then, the PEB "make[s] determinations of Fitness to continue naval service, entitlement to benefits, disability ratings, and disposition of service members referred to it" for the Secretary of the Navy. AR 02599, SECNAVINST 1850.4E ¶ 4.a. Finally, depending on the PEB's findings, the Navy or Marine Corps

will return a fit member to duty, separate the member with severance pay, or assign the member to the Temporary Disability Retired List ("TDRL") or Permanent Disability Retired List ("PDRL"). AR 02639, SECNAVINST 1850.4E ¶ 2023.

From April 2002 through June 2019, the Navy administered its DES findings through the use of category designations. During that period, the Navy used the following designations: Category I (All Unfitting Conditions); Category II (Those Conditions That Are Contributing to the Unfitting Condition); Category III (Those Conditions That Are Not Separately Unfitting, And Do Not Contribute To The Unfitting Condition); and Category IV (Conditions, Which Do Not Constitute A Physical Disability). *See* AR 02716, SECNAVINST 1850.4E, § 4111. While Category I conditions were always rated for disability purposes, Category II conditions—which were related to Category I conditions—were not assigned a disability rating but were eligible to become Category I conditions and could be rated during a TDRL reevaluation, and Category III and IV Conditions were never rated.

In the present litigation, Plaintiffs allege that the Navy's practice of not separately rating Category II conditions, except through the TDRL process, violated statute and regulation. More specifically, they claim the Navy was required to rate Category II conditions in all circumstances because they were related to Category I conditions. *See* Class Action Compl. for Declaratory & Injunctive Relief ("Compl."), ECF No. 1 ¶¶ 96–107. For Plaintiffs Springs and Reese, the record is robust and thoroughly explains how the Navy made fitness determinations in their respective cases. *See generally* AR 00001–02582. Plaintiffs, however, challenge the Navy's categorization of disability findings across a broad class of former Sailors and Marines pursuant to SECNAVINST 1850.4E. *See* Compl. ¶ 2. Because the instruction governing the categorization of conditions was nearly 20 years old when Plaintiffs initiated this litigation, and was exempt from notice and comment, there is little outside of the regulation itself that discusses how Category II conditions were applied across the Navy during the relevant time period.

The instruction provides only a general overview of how the Navy categorized PEB findings in SECNAVINST 1850.4E. Section 4111 lists the categories:

> Categorization of Findings[.] All PEB findings should be arranged into four categories for members found Unfit to continue naval service:
>
> a. Category I: All Unfitting Conditions
>
> b. Category II: Those Conditions That Are Contributing to the Unfitting Condition.
>
> c. Category III: Those Conditions That Are Not Separately Unfitting, And Do Not Contribute To The Unfitting Condition.
>
> d. Category IV: Conditions, Which Do Not Constitute A Physical Disability.

It also adds a "Note" that "Only Category I and Category II conditions will be rated by the PEB." AR 02716. Under Part 8 of the instruction, the Navy then discusses how it rates physical conditions. To begin, "[d]isabilities determined to be physically unfitting . . . shall be assigned a percentage rating." AR 02697. The PEB references the Veterans Administration Schedule for Rating Disabilities and then evaluates whether the service member is "Fit" or "physically Unfit for further military service." *Id.* The instruction then states that "[c]onditions that do not themselves render a service member Unfit for military service will not be considered for determining the compensable disability rating unless those conditions contribute to the finding of unfitness." AR 02699.

SECNAVINST 1850.4E then discusses re-categorization of conditions for service members on the TDRL in § 3618:

> a. Conditions newly diagnosed during TDRL periodic physical examinations shall be compensable upon finalization when:
>
> (1) the condition is unfitting; and
>
> (2) the condition was caused by the condition for which the member was placed on the TDRL, or directly related to its treatment; or
>
> (3) the evidence of record establishes that the condition either was incurred while the member was entitled to basic pay, or as the proximate result of performing duty, whichever is applicable, and was an unfitting disability at the time the member was placed on the TDRL. Otherwise, such conditions shall be deemed unfitting due to the natural progression of the condition and noncompensable under chapter 61 of 10 U.S.C. (reference (a)), although the member may be eligible for benefits for these conditions under the DVA.
>
> b. During the review of individual TDRL cases, the Informal and Formal PEBs will not consider those diagnoses previously categorized as Condition III. A final determination regarding a member's fitness for duty or recommended placement on the PDRL will be made based upon review of evidence pertaining to previously designated Category I or II conditions, or for conditions meeting the criteria of "new" diagnosis.

AR 02688–689. Enclosures 8 and 9 further mention fitting and unfitting conditions for specific medical diagnoses. *See generally* AR 02756–865.

Outside of the instruction, the record of Mr. Springs provides further explanation for the Navy's treatment of Category II conditions. When Mr. Springs sought to have the Navy rate his Category II conditions, bringing the same challenge before the Navy that he now brings in this lawsuit, the Navy responded as follows:

> Your PFR alleges the PEB improperly failed to rate your Category II conditions required by § 4111. For your information, that section does not require assignment of a separate disability rating for Category II conditions. It refers to the fact that under § 3618 of the same reference, only conditions that were previously designated Category I or II at the time of placement on the TDRL can later be found unfitting and assigned a rating following subsequent TDRL re-evaluations; hence, the language in § 4111 that only Category I or II conditions will be rated.

AR 00005. *See also* AR 00996 (finding that Mr. Reese's right shoulder pain "was considered a Category II condition that contributes to the unfitting condition and is related to Diagnosis I" (unfitting condition)).

The final discussion of Category II ratings in the administrative record (aside from the documents at issue) is a PowerPoint training for the Council of Review Boards (which includes the PEB). AR 03204–21. Two slides discuss the category system:

> It's the FPEB attorneys' position that conditions to be reviewed on TDRL reevaluation fall into three categories: (1) Newly diagnosed conditions[,] (2) Conditions designated Category III when the member was placed on TDRL[,] (3) Conditions designated Category I or II when the member was placed on TDRL . . . "During the review of individual TDRL cases, the Informal and Formal PEBs will *NOT* consider those diagnoses previously categorized as *Condition III*. A final determination regarding a member's fitness for duty or recommended placement on the PDRL will be based upon review of evidence pertaining to previously designated *Category I or II conditions*, or for conditions meeting the criteria of "new" diagnosis. (quoting SECNAVINST 3-39).

AR 003215–16. The training material also states that the "final determination regarding a member's fitness for duty" includes only Category I or II conditions or new diagnoses. AR 003216.

The Reeser Declaration, included in the administrative record, explains the PEB process, describes how the PEB assigned categories to conditions, and gives context for Category II–assigned

conditions. John Reeser has served as the President of the PEB from October 2014 to the present—the entire period at issue in this litigation. AR 03231, Reeser Decl. ¶ 1. As PEB President, his primary duty is to oversee and manage the PEB, which "determines the fitness of Sailors and Marines with medical conditions to perform their military duties[.]" *Id.* From May 2010 to October 2014, Mr. Reeser was President of the Naval Discharge Review Board, which reviewed service members' applications for upgraded discharge characterizations. AR 03232, Reeser Decl. ¶ 2. Before his two presidencies, Mr. Reeser served in the U.S. Navy for 30 years: six years on active duty and twenty-four as a reservist. AR 03232, Reeser Decl. ¶ 3.

**ARGUMENT**

This Court should deny Plaintiffs' motion to strike for two reasons. First, the D.C. Circuit specifically allows an agency to include a post hoc declaration in the administrative record when the agency decision is not subject to customary notice-and-comment rules. *WIFE*, 876 F.2d at 999. Second, even if the *WIFE* line of cases was inapplicable, the Declaration, Correction Memos, and Corrected PEB Findings are all properly included in the administrative record because they are contemporaneous explanations and clarifications of the agency decision made by the agency decision maker. *See, e.g., Rhea Lana*, 925 F.3d 521 (D.C. Cir. 2019). In an event, where, as here, Plaintiffs challenge the broad application of a policy and the individual records of the named Plaintiffs provide little insight on that issue, the proper remedy, if the Court were to find the agency explanation lacking, would be remand to the agency for further explanation, not discovery, as Plaintiffs suggest. But such a remand would only result in the exact type of agency explanation Mr. Reeser provides through his declaration.

**I. The Court may consider the Reeser Declaration and other documents.**

**A. The Reeser Declaration is properly included in the administrative record because the challenged policy was exempt from notice and comment.**

Congress specifically exempted the military from notice and comment with 5 U.S.C. § 553(a)(1). *See, e.g.*, *United States v. Mingo*, 964 F.3d 134 (2d Cir. 2020) ("The Secretary's designation of this and other military offenses as sex offenses, the court reasoned, thus 'falls within the military

affairs exception.'" (citation omitted)). So, the traditional rule, counseling against the acceptance of post hoc rationalizations when "an agency had an obligation to explain its action contemporaneously with the action" is inapplicable. *WIFE*, 876 F.2d at 999 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)); *see also Partlo v. Johanns*, Nos. 04-1462 (CKK), 2006 WL 1663380, at *22 (D.D.C. June 11, 2006). As the court in *WIFE* reasoned, "if an agency had no obligation to explain its actions contemporaneously, somewhat different considerations apply[,]" including admissibility of post hoc affidavits "submitted by the officials who took the action[.]" *WIFE*, 876 F.2d at 999. Accordingly, when the agency rule "was promulgated under an explicit exception to the APA[,]" "the entire record . . . is actually created for the sole purpose of judicial review[.]" *Partlo*, 2006 WL 1663380, at *23 (quoting *WIFE*, 876 F.2d at 999) (internal quotations omitted).

Plaintiffs do not contest that SECNAVINST 1850.4E was exempt from notice and comment, which excuses an agency from the normal rule making procedures. Instead, they argue that *WIFE* is distinguishable on the theory that the USDA regulation in question was nearly twenty years old when it was initially challenged and was a Secretarial level decision not subject to notice and comment. *See* Pls.' Mot. to Strike, ECF No. 48-1 at 6–7. But the fact pattern here is strikingly similar to *Wife* and there is no reason for this Court to depart from the D.C. Circuit's holding. Like the USDA in *WIFE*, the instruction in question was issued by the Secretary of the department who had "no obligation to explain [his] actions contemporaneously" given Congress's exception in 5 U.S.C. § 553(a)(1). *WIFE*, 876 F.2d at 999; *Partlo*, 2006 WL 1663380, at *23. And both cases involved a regulation that was approximately 20 years old when it was challenged and thus, like the USDA in *WIFE*, much of the Navy's task in litigation here is devoted to recreating a historical record. *WIFE*, 876 F.2d at 999 ("Where—as here—the basis for a regulation issued nearly twenty years ago is brought into question, the agency's principal litigation task is essentially historical").

Moreover, in *WIFE*, the D.C. Circuit specifically allowed agency "counsel's post hoc explanations" of the challenged policy, but noted that a "court may well determine that the representations of counsel require buttressing by affidavits submitted by the officials who took the action." *Id.* Here, the Navy has not relied on affidavits from counsel but has submitted a declaration

from the President of the PEB, the agency official who "directed the agency action." *Id.* Accordingly, the Reeser Declaration provides this Court an even better tool for judicial review, stamped with a "special indicia of reliability[,]" than the affidavit the D.C. Circuit accepted in *WIFE*. *Id.* at 1000.

**B. The Reeser Declaration (and other documents) are permissible because they explain contemporaneous Navy policy.**

Citing to *Rhea Lana,* 925 F.3d 521 (D.C. Cir. 2019), Plaintiffs claim that even if exemption from notice and comment rulemaking can be a factor, a post hoc declaration will not be permitted if it offers "a new theory" for the agency action. As an initial matter, *Rhea Lana* does not proport to undercut or overrule *WIFE*. Rather, *Rhea Lana* cites to *WIFE* as a reason to *permit* the inclusion of the declaration at issue in that case. 925 F.2d at 525. Further, Plaintiffs' assertion that the Reeser Declaration advances "a new theory found nowhere in the over 3000-page contemporaneous Administrative Record" is wrong. Pls.' Mot to Strike at 8.

As Mr. Reeser explained in his Declaration, upon referral to a PEB, both a PEB Medical Officer and a PEB Line Officer would review a member's MEB file and then assign each condition as either a Category I, II, III, or IV condition. AR 03236, Reeser Decl. ¶ 11. If any condition is assigned a Category I rating, meaning that at least one condition makes a service member unfit for continued military service, then all conditions are sent to the Department of Veterans Affairs for each condition to receive a disability rating. AR 03237–38, Reeser Decl. ¶ 13. If the conditions were determined to be stable, the member would be separated or placed on the PDRL with manifestations of impairment accounted for in the Category I unfitting conditions. AR 03239, Reeser Decl. ¶ 18.

But if any of the conditions were determined to be unstable, and if the Category I conditions are equal to or greater than 30%, then the member is placed on the TDRL for reevaluation of their Category I and II conditions in 18 months. AR 03243–45, Reeser Decl. ¶ 28. This allows a member the opportunity to be subsequently reevaluated in case the Category II condition becomes an unfitting Category I condition or there are additional manifestations of impairment. *Id.* Then upon reexamination on the TDRL, the PEB had the authority to elevate a Category II condition to a Category I condition if the condition had worsened and was now unfitting either individually,

collectively, or through the combined effect of two or more conditions. AR 03244, Reeser Decl. ¶ 28. It was at this point that a Category II condition (now reclassified as a Category I) would be rated. *Id.* In other words, a Category II rating was used by the PEB as a placeholder that would allow it to later determine whether the Category II condition should be reclassified as a Category I condition or a Category III condition. AR 03243, Reeser Decl. ¶ 28.

As the Navy explained in its Motion for Summary Judgment, this explanation is entirely consistent with both the relevant statute and Navy regulations. Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 45 at 16–24. For present purposes, though, it is important to note that the Reeser Declaration simply expounds on the explanation provided to Mr. Springs when he raised this same challenge in his own FPEB appeal:

> [S]ection [4111] does not require assignment of a separate disability rating for Category II conditions. It refers to the fact that under § 3618 . . . only conditions that were previously designated Category I or II at the time of placement on the TDRL can later be found unfitting and assigned a rating following subsequent TDRL re-evaluations; hence, the language in § 4111 that only Category I or II conditions be rated.

AR 0005. And this same explanation regarding how the PEB reviews Category II conditions when a service member is reevaluated on the TDRL is also in the administrative record in the form of a PowerPoint training for the Council of Review Boards (which includes the PEB). AR 003215–16. (stating that while upon TDRL reevaluation a "final determination regarding a member's fitness for duty or recommended placement on the PDRL will be based upon review of evidence pertaining to previously designated *Category I or II conditions*" (emphasis in original)). Given such clear references in the administrative record to the evaluation of Category II conditions on the TDRL, Plaintiffs claim that Mr. Reeser's declaration advances "a new theory found nowhere in the over 3000-page contemporaneous Administrative Record" is meritless. Pls' Mot. to Strike at 8.[1]

---

[1] For the same reason, Plaintiffs' reliance on *AT & T Info.-Sys., Inc. v. Gen. Servs. Admin., 8*10 F.2d 1233 (D.C. Cir. 1987), is misplaced. *See* Pls' Mot. to Strike at 8. In *AT&T*, the agency record contained no explanation for the agency action, which is not the case here. 810 F.2d at 1236. *AT&T* also did not involve a challenge that was exempt from notice-and-comment rulemaking and therefore sheds no light as to whether the Reeser Declaration is properly included in the administrative record under *WIFE*.

Here, Mr. Reeser, as the President of the PEB, is the proper official to present contemporaneous rationales. Mr. Reeser has served as PEB President since October 2014, which includes the entire time encompassing the certified class.[2] AR 03231, Reeser Decl. ¶ 1; Mem. Op. & Order, ECF No. 40 at 16. And as the President of the PEB, Mr. Reeser was the Navy official that issued the PEB's formal action for both named Plaintiffs well before this lawsuit was initiated. AR 00016–17; AR 00782–84. Thus, Mr. Reeser is in the optimal position to offer insight into the workings of the PEB and its application of the category system to service members, and there is no reason to strike his declaration from the administrative record. *Rhea Lana*, 925 F.3d at 524 ("We thus have allowed reviewing courts to rely on post hoc declarations in certain situations when the declarations have come from the relevant agency decisionmaker."). And because the Reeser Declaration does not offer a new theory for the agency's policy but rather "illuminates the reasons that are already implicit in the internal materials," D.C. Circuit law specifically permits its inclusion. *Id.* (cleaned up) (quoting *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016); *see also Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) ("[T]here is nothing improper in receiving declarations that 'merely illuminate[] reasons obscured but implicit in the administrative record.'" (citation omitted)).

For similar reasons, the Court should also not strike the Correction Memos and Corrected PEB Findings that appear in the administrative record index as documents 45 and 46. AR 3222–30. As Defendants previously explained, the agency included these documents to clarify that, where there were inconsistencies in category ratings between the PEB's Formal Findings and the PEB's Formal Rationale for Mr. Springs and Mr. Reese, the ratings in the PEB's Formal Rationale control. AR 3222–23; Defs.' Mot. at 10 n.7 & 13 n.8, ECF No. 45. But, as the Navy noted, any "error[s] d[o] not change the member's benefits" for either Mr. Springs or Mr. Reese. *Id.* So, it is no surprise that neither party

---

[2] SECNAVINST 1850.4E specifically outlines the PEB Presidents' duties: (1) "oversee the daily workings and administration of the . . . PEB"; (2) oversee the legal review of cases; (3) "modify or cancel Findings[,] Letters[,] and Notification of Decision Letters"; (4) "issue the PEB findings"; and (5) reject and remand cases as appropriate. AR 02713–15; SECNAVINST 1850.4E ¶¶ 4101–10.

cited these documents in their summary-judgment briefing for anything other than background. *See generally* Pls.' Mot. for Summ. J., ECF No. 43-1; Defs.' Mot. at 10–13.

And it was entirely permissible for the Navy to include these clarifying documents in the administrative record. Because they contain "no new rationalizations" and are "merely explanatory of the original record," the documents are "admissible for [the Court's] consideration." *Olivares,* 819 F.3d at 464; *AT & T Info. Sys*.., 810 F.2d at 1236; *Seeger v. U. S. Dep't of Def.*, Civ. A. No.17-639, 2019 WL 2058721, at *6 (D.D.C. May 9, 2019); *cf. Informatics Applications Grp., Inc. v. United States*, 132 Fed. Cl. 519, 525 (Fed. Cl. 2017) (explaining that "supplementation of the administrative record is permitted to correct mistakes and fill gaps"). Put differently, the Correction Memos and Corrected PEB Findings also "illuminate" and clarify category ratings "that are already implicit in the internal materials." *Rhea Lana,* 925 F.3d at 524 (alterations omitted) (quoting *Olivares*, 819 F.3d at 464). Accordingly, there is no reason for the Court to strike these documents or the Reeser Declaration.

**II. Plaintiffs are not entitled to unusual extra-record discovery.**

In the alternative to striking the Reeser Declaration, Plaintiffs argue that they should be permitted discovery "to determine how the Reeser Declaration was created, its reliability, and how much weight the Court should afford it." Pls.' Mot. to Strike at 9. Plaintiffs' basis for this request is somewhat unclear, referencing at various points "bad faith" by the Navy, completion of the administrative record, and the need for "additional background and explanatory information[.]" *Id.* at 9–13. But Plaintiffs misunderstand APA review and provide no appropriate basis for highly unusual extra-record discovery.

Where, as here, Plaintiffs challenge the broad application of a policy and the individual records of the named Plaintiffs provide little insight on that issue, the proper remedy is remand to the agency for further explanation—exactly what the Reeser Declaration provides. A court is not normally authorized to "conduct a de novo inquiry" into an agency's decisions or to "reach its own conclusions based on such an inquiry." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *see also Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) (reasoning that a de novo hearing was not the remedy for an insufficient agency explanation). Instead, "the proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation." *INS*, 537 U.S. at 16 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Camp*, 411 U.S. at 142–43 (finding the remedy was to "obtain from the agency . . . such additional explanation"). So, if this Court decides that the agency's action "is not sustainable on the administrative record made," then the proper approach would be to remand the matter. *Camp*, 411 U.S.at 143; *see N. Air Cargo v. USPS*, 674 F.3d 852, 861 (D.C. Cir. 2012) (lower court "should have remanded . . . for a complete and authoritative agency interpretation" because "the agency's decision . . . lacked any careful analysis or explanation"). And upon remand, the Navy would submit exactly the information in the Reeser Declaration: a detailed explanation of contemporaneous PEB policy by the agency decisionmaker. *See Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 217 n.8 (D.C. Cir. 2013). Plaintiffs give no reason to deviate from the usual course of APA litigation here.

Plaintiffs first seem to argue that submitting the Reeser Declaration itself is "prima facie evidence of potential bad faith" by the Navy. Pls.' Mot. to Strike at 11. But it could not be bad faith for the Navy to submit a declaration that is entirely permissible under D.C. Circuit precedent. And, in any event, Plaintiffs have not come close to a "strong showing of bad faith or improper behavior on the part of the agency" that would justify extra-record discovery. *Biden v. Texas*, 142 S. Ct. 2528, 2546 (2022) (citation omitted); *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2574 (2019). Plaintiffs themselves seem to admit they have not met this burden, referencing only "potential" bad faith and a "strong reason to *suspect* bad faith." Pls.' Mot. to Strike at 11; Affidavit of Christina G. Sarchio ("Sarchio Aff.") ¶ 8, ECF No. 48-5 (emphasis added). But Plaintiffs cannot simply throw around unsupported allegations of "potential" bad faith to bypass the usual standards of APA review, and then proceed to rummage around the Navy, including "the opportunity to serve document requests and interrogatories and the opportunity to examine Mr. Reeser under oath." Sarchio Aff. ¶ 9. A "strong showing of bad faith or improper behavior" requires much more, such as "an accumulation of unusual circumstances that demonstrate[] an explanation for agency action that [i]s incongruent with what the record reveal[s] about the agency's priorities and decisionmaking process." *Biden v. Texas*, 142 S. Ct. at 2546 (citation omitted). Yet there are no "unusual circumstances" here, and as

discussed above, nothing about the Reeser Declaration is "incongruent with what the record revealed about the agency's priorities and decisionmaking process." *Id.* Nor does anything "in this record suggest[] a significant mismatch between the decision [Mr. Reeser] made and the rationale he provided." *Id.* (citation omitted). In short, Plaintiffs cannot rely on "the Government's litigation conduct"—submitting a declaration as allowed by D.C. Circuit law—to level serious and unfounded allegations of "potential" bad faith and obtain highly unusual extra-record discovery. *Id* at 2547.

Plaintiffs' other arguments fare no better because they rely entirely on the incorrect premise that the Reeser Declaration *itself* is the relevant "decision" at issue here. For example, Plaintiffs pitch the Reeser Declaration as the key decision and argue that "the Administrative Record is incomplete, as the Navy has not submitted all materials related to the Declaration, including, for example, materials relied upon in drafting it and materials of the work of subordinates who assisted with it." Pls.' Mot. to Strike at 13. But Plaintiffs themselves admit that "the Reeser Declaration is not the final decision in this case," *id.* at 12, so it makes no sense to treat the declaration as a decision that requires *its own* administrative record. As discussed above, the Reeser Declaration is simply explanatory of the Navy's *prior* decision to treat Category II conditions as placeholders for the TDRL. And nothing in *WIFE*, *Rhea Lana*, or the other cases discussed above indicate that a permissible agency declaration in an APA case opens the door to wide-ranging discovery into, for example, "the origins, contents, and bases of [the declaration] to determine why it was drafted, what materials were relied upon in the drafting process, and whether such materials were excluded." Pls.' Mot. to Strike at 13; *see Rhea Lana*, 925 F.3d at 525 (concluding that a declaration was admissible without any mention of discovery); *WIFE*, 876 F.2d at 999 (acknowledging that "representations of counsel" may "require buttressing by affidavits submitted by the officials who took the action" but not indicating any need for discovery).

Because the parties agree that the administrative record is complete as to the actual decision at issue—the Navy's use of Category II conditions—there is no reason for extra-record discovery. Plaintiffs cite several cases that they claim allows them to take discovery. But only one case appears

to have permitted discovery in an APA case challenging agency action.[3] In *Nat. Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Circuit 1975), the D.C. Circuit specifically found that certain material relied on by the decision maker was withheld from the administrative record. Accordingly, it permitted "limited discovery" to determine "whether any other documents which are properly part of the administrative record have been withheld." *Id.* Here, Plaintiffs do not contend, much less present evidence, that that the agency withheld documents from the administrative record; their request is based entirely on the *addition* of the Reeser Declaration and a heavy dose of speculation and conjecture. The Court should accept the Reeser Declaration (as discussed above), or else strike the Reeser Declaration and remand to the agency for further explanation (which would likely result in exactly the same information the Reeser Declaration provides).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Strike the Reeser Declaration, the Correction Memos, and the Corrected PEB Findings from the administrative record.

Dated: September 16, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew E. Carmichael*
ANDREW E. CARMICHAEL
Senior Trial Counsel
STEPHEN EHRLICH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005

[3] One case denied plaintiffs' request for discovery. *See Seeger v. U.S. Dep't of Def.*, 2019 WL 2058721, at *6 (D.D.C. May 9, 2019). And in *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100 (D.D.C. 2013), the court found the case was subject to discovery only because the challenge was to agency *inaction* and thus "may not be resolved solely based on the administrative record." None of Plaintiffs' other cited APA cases concerned a request for discovery.

Tel: (202) 514-3346
Email: andrew.e.carmichael@usdoj.gov

*Counsel for Defendants*